## COCKE *vs.* BROGAN AND THORN.

A deed for lands executed not in the presence of witnesses, but acknowledged as required by law, is sufficient—no subscribing witnesses are necessary, where the execution is duly acknowledged.

This is one method: another is by the testimony of one of the subscribing witnesses, when the deed must be executed in the presence of two witnesses, or acknowledged by the grantor in their presence when executed before.

Either method is effectual.

·If one convey real estate by deed purporting to convey fee simple, or less estate, and shall not at the time have the legal estate therein; but shall afterwards acquire the legal title, the same vests in the grantee as effectually as though originally conveyed.

EJECTMENT, determined in Pulaski, in January, 1844, before the Hon. JOHN J. CLENDENIN, one of the circuit judges. Ann E. Cocke, a minor, by her guardian, A. Fowler, sued Hugh Brogan, as tenant in possession of the premises, to recover certain lots or parcels of land in the county of Pulaski, and city of Little Rock. At the term to which the original writ was returnable, Thorn appeared in the circuit court, and as the person through whom the defendant, Brogan, claims title to the premises in question, was on his motion made co-defendant. And thereupon, the defendants pleaded jointly the general issue, to which the plaintiff joined issue. The case was tried upon this issue, and a verdict found, and judgment given in favor of the defendants.

On the trial, the plaintiffs excepted to certain opinions of the court, and by bill of exceptions properly subscribed by the court, made all of the testimony adduced on the trial, part of the record of the cause. To establish her right, the plaintiff adduced and read in evidence to the jury, a patent from the United States to Roswell Beebe, bearing date the 25th day of September, 1839, granting to him and to his heirs, the west fractional part (west of the Quapaw line) of the south-west fractional quarter of fractional section two, (south of Arkansas river,) in township one north of range twelve west: and then exhibited the plan of the city of Little Rock, recorded in a book kept for the registry of deeds and mortgages in the county of Pulaski, and proved that the lots in controversy, are a part of, and included in the tract of land specified and described in the patent. The defendants admitted that the lots in question are laid off, and described in the same manner on the plan of the city of Little Rock, exhibited to the jury, and the old plan of the town of Little Rock. She then proved by a witness, that Dr. John H. Cocke had two children living in 1827, one a son named John, the other a daughter named Ann; that John died three or four years thereafter, and that his father died in 1836 or 1837; and proved by another witness, that the defendant, Brogan, was in possession of the lots in controversy, residing thereon in the months of March and April, 1843, and still possesses and resides on

Cocke *vs.* Brogan and Thorn.

them. She then read in evidence, a deed of conveyance from Chester Ashley and wife, to William E. Woodruff, bearing date the 5th day of May, 1827, conveying to the latter, in fee simple, the lots in controversy. And after proving by affidavit, that the original thereof is not within her control, but lost by time and accident, also read, in evidence from the record of deeds in the office of the clerk and ex-officio recorder for said county of Pulaski, a deed of conveyance from said William E. Woodruff and wife, to John J. P. Cocke, son of John H. Cocke, bearing date the 12th day of February, 1838, conveying to the said John J. P. Cocke, in fee simple, the lots in question. She then proved by another witness, that Dr. John H. Cocke had three children, a boy named John, and two girls, Ann and Harriet; that John and Harriet are dead: the former having died when not more than 8 or 9 years old. She then read in evidence, from the original record of the court of probate of the county of Pulaski, the order of said court, appointing Absalom Fowler, guardian of said plaintiff, and approving his qualifications as such. And then offered to read in evidence, a deed with the certificate of acknowledgement and record thereof, from Roswell Beebe and wife, to Chester Ashley, bearing date the 1st day of January, 1841, conveying to the latter, by release and quit claim, amongst others, the lots in controversy: but the defendants objected thereto, and the court refused to permit said deed to be read to the jury, and the plaintiff's excepted to the opinion of the court refusing to permit the same to be read as evidence to the jury. This being all the testimony adduced on the trial, the court on the motion of the defendants, "instructed the jury to find for the defendants as in case of nonsuit," and the plaintiff excepted also to the opinion of the court, so instructing the jury. The case came here by appeal.

*Fowler*, for appellant. Although the patent was issued, and the deed from Beebe and wife, to Ashley, was executed after the deed from Ashley and wife, to Woodruff, and from Woodruff and wife, to John J. P. Cocke, from whom the plaintiff inherited, yet the title derived from said patent and deed to Ashley *immediately* vested in the plaintiff. See *Rev. Stat.* 188, 189, *sec.* 4.

The 12th section on page 189 of the Revised Statutes, directs that

there shall be two subscribing witnesses to deeds.    This is merely directory, and is simply designed as a pre-requisite to the registry of the deed, as appears by section 22, page 191.    A deed executed without witnesses, and recorded, is good between the parties thereto, and persons claiming under them, and passes a legal estate as clearly as if attested by two witnesses, acknowledged and recorded.    The three latter requisites only being required and necessary to protect purchasers against other subsequent purchasers and judgment creditors; and by such witnesses, acknowledgement or probate, and record to operate as notice to such, and nothing more, whatever.    The whole of the statutes regulating conveyances of real estate, and on frauds, taken together, go clearly to establish this position.    See *Rev. Stat.* pages 187 *et seq.*, and 413 *et seq.*  The deed between Beebe and wife, and Ashley, was therefore improperly excluded and rejected as evidence.

The instruction of the court, that the jury should "find for the defendants, as in case of nonsuit," was clearly contrary to law.    "The right of trial by jury shall remain inviolate."    *Const. of Ark. Art.* 2, *sec.* 6.    "Judges shall not charge juries with regard to matter of fact, but may state the testimony and declare the law."    *Ib. Art.* 6, *sec.* 12.    And by the common law, "the plaintiff is in no case compellable to be nonsuited, and therefore, if he insist upon the matter being left to the jury, they must give in their verdict."    2 *Tidd's Pr.* 798. 2 *Dunrf. & East's Rep.* 281, *Watkins vs. Towers et al.*

We have no law in Arkansas, authorizing the judge to render verdict, or to instruct a jury to find "as in case of nonsuit."    Power in England was given to the courts by *Stat.* 14, *Geo.* 2, *ch.* 17, where the plaintiff should neglect after issue joined, to bring such issue on to be tried; but even in that kingdom, such proceeding was never known after an issue was submitted to a jury.    That statute is not in force in Arkansas, nor is any other British statute enacted after the 4th year of James I.    See the provisions of that statute in *Tidds Pr.* 702.

*Ashley & Watkins,* and *Hempstead,* contra.    The error complained of is, that the circuit court refused to admit in evidence, one of

Cocke *vs.* Brogan and Thorn.

the deeds, which the plaintiff below offered to establish her chain of title. There was no subscribing witnesses to the paper so offered, purporting to be the deed in question. It was clearly not admissible as a deed, at law under the 12*th sec. Title, Conveyances, Rev. Stat. p.* 189. The statute makes all instruments of writing for the conveyance of land inoperative to pass title, unless they have two subscribing witnesses. A party having such instrument might make it the foundation of a bill in chancery for title, but it is no conveyance in law. The provisions and the intention of the statute on this subject, are too plain and obvious to admit of argument.

*By the court,* RINGO C. J. Upon the facts thus presented by the record, the plaintiff by her assignment of errors, questions, First, The correctness of the opinion of the court, excluding from the jury the said deed of Roswell Beebe and wife, to Ashley; and Second, The opinion of the court, instructing the jury to to find for the defendants "as in case of nonsuit."

To the deed of Beebe and wife, to Ashley, there is no subscribing witness; but it was duly acknowledged by all of the parties to it, before a justice of the peace in and for the county of Pulaski, in which the lands thereby conveyed are situate, on the day of its date, and her dower interest therein duly relinquished by the wife of Beebe, and on the same day filed for record in the office of the clerk of the circuit court and ex-officio recorder for said county, and duly recorded by him on the 8th day of January, 1841. Does the deed thus executed and authenticated, transfer the legal title of Beebe in the lands thereby purporting to be conveyed to Ashley? That it does pass the estate as between the parties to the instrument, we think there can be no doubt, because the statute relating to conveyances of real estate, *Rev. Stat. Ark. ch.* 31, provides expressly for the acknowledgment of deeds or instruments in writing, for the conveyance of real estate, by the grantor personally appearing before any justice of the peace, and stating that he has executed the same for the consideration and purposes therein mentioned and set forth; and the relinquishment of dower by any married woman, in any of her husband's real estate, "shall be authenticated and the title passed," by her volunta-

88

rily appearing before the proper court or officer, and in the absence of her husband, declaring that she has of her own free will, executed the deed or instrument in question, or that she had signed and sealed the relinquishment of dower, for the purposes therein contained and set forth, without compulsion or undue influence of her husband. This is one of the modes prescribed by law, for the authentication of such deeds and instruments in writing, as are designed to convey any interest in real estate, which appears to us to be clearly indicated and directed by the 13, 16, 17, 18, 20, 21, and 22 sections of the statute cited above.

Another method of authenticating such deeds and instruments is, by the testimony of the subscribing witnesses thereto, and in such case, there must be two witnesses, who subscribe the same according to the provisions of the 12th section of the statute; that is, the deed must be executed in their presence; or when not executed in their presence, be acknowledged by the grantor in their presence, and whenever the witnesses do not subscribe the deed at the time of its execution, the date of their subscribing the same must be stated with their signatures, and such deed being acknowledged by the grantor, or its execution proven by one or more of those so subscribing it as witnesses, before any court or officer authorized to take such acknowledgment or proof, according to the provisions of the 13th, 14th and 15th sections of the same statute, the law regards as well and sufficiently authenticated, upon the same being certified by the court or officer taking it, and authorizes the deed together with such certificate of the court or officer to be recorded. Thus making such acknowledgment of the grantor before a court or officer authorized to take it, as effectual in every respect and for every purpose as the probate thereof by the subscribing witness, thereby in such cases dispensing altogether with the necessity of having such witnesses. The deed in question therefore appearing to have been properly acknowledged by the grantor, and the acknowledgment thereof to have been well and sufficiently certified by an officer authorized to take and certify it, certainly transferred the legal title to the lots in controversy from Beebe to Ashley, and the same therefore, by mere operation of law, immediately vested in the person then entitled to the estate by

title derived from the previous grant or conveyance of Ashley, according to the provisions of the 4th section of said statute, which declares that "if any person shall convey any real estate by deed purporting to convey the same in fee simple absolute or any less estate, and shall not at the time of such conveyance, have the legal estate in lands, but shall afterwards acquire the same, the legal or equitable estate afterwards acquired, shall immediately pass to the grantee, and such conveyance shall be as valid as if such legal or equitable estate had been in the grantee at the time of the conveyance." This deed from Beebe and wife, to Ashley, was legitimate testimony for the plaintiff, as it would prove, or at least conduce to prove, in him a vested legal right to the lots in controversy; consequently, the court erred in refusing to permit her to read it in evidence to the jury, and for this error the judgment is reversed.

The second question, we consider of little importance, and free from difficulty. For although the language in which the instruction to the jury is couched, is not strictly appropriate, we cannot perceive how the plaintiff could have been prejudiced by it. Because it is perfectly clear that the testimony then before the jury, not only failed to establish in her any legal right to the lots in controversy, but proved it to be in a different person; consequently, she had no legal right to recover them upon such testimony, and the court was bound so to instruct the jury, and such we understand to be the scope and object of the instruction as given. The addition thereto, that the finding should be "as in case of nonsuit," not conveying to the jury any legal idea whatever, nor having any legal effect upon the rights of either party, although superadded to the verdict for the defendants. Judgment reversed.